IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDULLAH BROWN, et al. : | |
| : | |
| Plaintiffs, : | |
| : | No. 4:CV-07-1299 |
| v. : | |
| : | (Judge McClure) |
| CAMERON LINDSAY, et al., : | |
| : | |
| Defendants. : | |

**MEMORANDUM**

October 1, 2009

**I. Introduction**

On July 17, 2007, plaintiff Abdullah Brown, then an inmate at the United States Penitentiary in Canaan Township, Pennsylvania ("USP Canaan"), proceeding pro se on behalf of himself and others, instituted this Bivens action by filing a complaint. (Rec. Doc. No. 1). Defendants are USP Canaan Warden Cameron Lindsay, Associate Warden Frank Karam, and Chaplain John Johnson ("USP Canaan Defendants"). Brown also has included National Inmate Appeal Administrator for the Federal Bureau of Prisons ("BOP") Harrell Watts and Director of the BOP Harley Lappin as defendants in his complaint, though in their brief to this Court defendants do not list Watts or Lappin as defendants. Brown alleges that the BOP, in a discriminatory manner, removed particular religious

books from the chapel library at USP Canaan.

## II. Procedural History

On October 12, 2007, Brown filed a Motion for Temporary Restraining Order. (Rec. Doc. No. 102). Brown then filed, on October 22, 2007, a motion seeking to amend his original complaint so as to include defendants from FCI Big Spring. (Rec. Doc. Nos. 103-104). On October 29, 2007, defendants filed a motion seeking an extension of time to respond to Brown's complaint and a brief in opposition to Brown's motion for a temporary restraining order. (Rec. Doc. No. 107). On November 20, 2007, defendants filed a motion for extension of time in which to file a reply brief, which was granted by this Court on November 21, 2007. (Rec. Doc. Nos. 109 and 110). On November 30, 2007, Brown filed a Motion for Summary Judgment and a Motion for Temporary Restraining Order (Rec. Docs. Nos. 111 and 112). On December 14, 2007, defendants filed briefs in opposition to both Brown's motion for summary judgment and his motion for a temporary restraining order. (Rec. Doc. Nos. 117 and 118).

Defendants, on January 11, 2008, filed a Motion for Extension of Time to Respond to Complaint, which this Court granted on February 26, 2008, while also denying as moot Brown's motion for preliminary injunctive relief. (Rec. Doc. Nos. 123, 126, 125). On January 22, 2008, Brown filed another motion for

summary judgment. (Rec. Doc. No. 124).

On March 14, 2008, defendants filed a Motion to Dismiss and for Summary Judgment. (Rec. Doc. No. 130). On March 24, 2008, before the defendants filed a brief in support of their motions, Brown filed a brief in opposition to the Motion to Dismiss and for Summary Judgment. (Rec. Doc. No. 131). Defendants then filed their brief in support of their Motion to Dismiss and for Summary Judgment on March 28, 2008. (Rec. Doc. No. 133). On April 2, 2008, defendants filed a Motion for Leave to File Statement of Facts <u>Nunc</u> <u>Pro</u> <u>Tunc</u> and a brief in support thereof. (Rec. Doc. Nos. 134 and 135). This Court, on April 10, 2008, granted defendants' motion requesting leave to file their statement of material facts <u>nunc pro tunc</u>. (Rec. Doc. No. 136). On May 5, 2008, this Court denied as moot defendants' October 29, 2007 motion for an extension of time to respond to Brown's complaint. (Rec. Doc. No. 138).

This Court also denied Brown's October 12, 2007 motion for temporary restraining order, and his November 30, 2007 and January 22, 2008 motions for summary judgment, on July 10, 2008 (Rec. Doc. Nos. 142 and 143); denied Brown's motion for temporary restraining order dated November 30, 2007 on August 1, 2008 (Rec. Doc. No. 144); and denied Brown's motion to amend his complaint dated October 22, 2007 on August 14, 2008. (Rec. Doc. No. 145).

On March 16, 2009, Brown filed a motion for an extension of time for (1) filing a supplement to his brief in opposition to defendants' motion to dismiss or for summary judgment and (2) filing a statement of material facts responding to defendants' statement dated April 2, 2008, in accordance with Local Rule 56.1. (Rec. Doc. No. 151). This Court granted Brown's request on March 20, 2009, allowing him twenty-five days from the date of its order to file a supplement to his brief in opposition to defendants' motion to dismiss or for summary judgment, as well as requiring him to file a statement of material facts within 25 days in response to defendants' statement in accordance with Local Rule 56.1. (Rec. Doc. No. 152). Brown filed a statement of material facts on April 16, 2009. (Rec. Doc. No. 153).

At issue in the instant memorandum and order is defendants' Motion to Dismiss and for Summary Judgment. (Rec. Doc. No. 130). This Motion to Dismiss and for Summary Judgment is now ripe for disposition, and for the following reasons we will grant the Motion to Dismiss.

**III. Allegations in the Complaint**

Taking as true all of the allegations in Brown's complaint, the facts are as follows. In September 2006, it became known that religious texts published by Dar-Us-Salam had been removed from the prison chapel library's shelves.

Defendants Karam and Johnson told Brown that they had received a BOP Central Office Memo directing them to remove the material from the library shelves. Brown was not allowed to view the memo. In addition, Brown filed a request for an informal resolution, an appeal with Warden Lindsay, and an appeal with the Northeast Regional of the BOP in January 2007, all to no avail. Brown then appealed his grievance to the Office of the General Counsel, which noted "that certain books were ordered removed for security reasons . . . ." (Rev. Doc. No. 1 at 9).

Brown claims that "there is no indication that any of the books removed were even reviewed . . . to make an honest and informed determination that a particular book fit said category . . . ." Id. He claims that the reputation of Dar-Us-Salam, and not the content of the books, was the impetus for the removal of the religious material at issue. In addition, although Brown admits that the books of other religions were also removed by the BOP, he states that this "removal was done as an after-thought and to make it appear that there was no discrimination taking place . . . ." Id. at 11.

## IV. Standards of Review

### I. Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). "The tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. Kost, 1 F.3d at 183. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. At the motion to dismiss stage, the court considers whether the plaintiff is entitled to offer evidence to support the allegations in the complaint. Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955,

1960 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950. In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Hellmann v. Kercher, 2008 U.S. Dist. LEXIS 54882, 4 (W.D. Pa. 2008). Federal Rule of Civil Procedure 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Twombly, 127 S.Ct. at 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief under it. Hellmann, 2008 U.S. Dist. LEXIS at 4-5. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. Twombly, 127 S.Ct. at 1965. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950 (citing Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." Id. at 326. If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." Id. at 327.

## V. DISCUSSION

### 1. Plaintiff's Attempt to Institute a Class Action

Federal Rule of Civil Procedural 23(a) states that a member of a class may sue on behalf of all members of the class only when:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). A class may only be certified if all four elements of Fed. R. Civ. P. 23(a) are met. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 n. 6 (3d Cir. 2008). As the Court of Appeals for the Third Circuit has noted,

"pro se litigants are generally not appropriate as class representatives." Hagan v. Rogers, 570 F.3d 146, 159 (3d Cir. 2009) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (stating that "it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action")). The question as to whether pro se litigants are appropriate class representatives goes to the fourth requirement found in Rule 23(a): whether the pro se litigant will "fairly and adequately protect the interests of the class." See Hagan, 570 F.3d at 159; Fed. R. Civ. P. 23(a).

In this case, it appears clear that Brown is seeking to represent both named and unnamed plaintiffs in this action. The fact that Brown is a prisoner proceeding pro se generally will make class certification inappropriate, as such certification would run counter to both Fed. R. Civ. P. 23(a) and Third Circuit precedent. In addition, there is no basis for this Court's finding that a denial of class certification would be inappropriate. See, e.g., Hagan, 570 F.3d at 159 (noting that, as the district court had deferred any consideration as to the plaintiff's motion to appoint counsel, it was inappropriate for the district court to deny class certification on the basis of inadequate representation without first deciding the plaintiff's motion to appoint counsel). In this case, we have previously granted all plaintiffs' motions to proceed in forma pauperis. (Rec. Doc. No. 69). Therefore, we will deny Brown's

9

motion to certify his action as a class action.

## 2. Plaintiff's Request for Injunctive Relief

The jurisdiction of federal courts is limited by Article III of the Constitution of the United States to "cases" and "controversies." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). In addition, "[t]he case or controversy must be a continuing one and must be 'live' at all stages of the proceedings." Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981) (citing Preiser v. Newkirk, 422 U.S. 395, 401 (1975); Roe v. Wade, 410 U.S. 113, 125 (1973)). As the Third Circuit has noted, "the courts have held that a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge." Wilcox, 650 F.2d at 27 (3d Cir. 1981) (citing Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976); Culp v. Martin, 471 F.2d 814, 815 n. 13 (5th Cir. 1973)).

Notably, "[t]he burden of demonstrating mootness 'is a heavy one.'" County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting United States v. W. T. Grant Co., 345 U.S. 629, 632-33 (1953)). Mootness may be shown if "'there is no reasonable expectation . . .' that the alleged violation will recur," Davis, 440 U.S. at 631 (quoting W. T. Grant Co., 345 U.S. at 633), and "that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id.

10

Brown's request for injunctive relief has been rendered moot. In his complaint, Brown appears to seek injunctive relief so as to prevent defendants "from further depriving Plaintiffs of the religious books that were arbitrarily and discriminatorily confiscated" and to require defendants "to return the confiscated books to the Sunni Muslim prison library locker for their use . . . ." (Rec. Doc. No. 1 at 13). In the present case, Brown is no longer subject to the conditions of his imprisonment at USP Canaan; instead, he has been transferred to another facility. Therefore, Brown lacks standing to seek injunctive relief in the present case. In addition, the defendants have returned the religious books at issue to the prison chapel library's shelves, and the BOP has rejected the "Standardized Chapel Library Project" policy. (See Rec. Doc. No. 134-3 at 2-3). There is, then, no reasonable expectation that a wholesale removal of books will reoccur, and interim events have fully vitiated the effects of the policy of which Brown has complained. In addition, this case does not fit neatly into any of the four relevant exceptions to the mootness doctrine: (1) there is no existence of collateral consequences, see Sibron v. New York, 392 U.S. 40 (1968); (2) the injury complained of is not capable of repetition evading review, Roe, 410 U.S. at 113; (3) the defendants may not freely resume the injury-causing conduct, W. T. Grant Co., 345 U.S. 629; and (4) this is not a certified class action case, see Sosna v. Iowa, 419 U.S. 393 (1975).

In light of the foregoing, we will deny Brown's request for injunctive relief, as this request has been rendered moot.

### 3. Plaintiff's Claims Against Defendants Watts and Lappin

In addition to the USP Canaan Defendants, Brown also includes in his complaint allegations against National Inmate Appeal Administrator for the BOP Harrell Watts and Director of the BOP Harley Lappin. Brown makes no mention of Lappin in his complaint other than by identifying Lappin as the Director of the BOP and by stating that Lappin "is responsible in large measure for the violations complained of herein." (Rec. Doc. No. 1 at 7). In regards to Watts, Brown claims that "Watts did willfully, deliberately, with malice aforethought, knowingly in his individual and official capacities, under color of federal law" violate his statutory and constitutional rights. Id. at 9-10. Brown also claims that Watts' violations, and Watts' decision to remove the books from the chapel library, were "discriminatory, arbitrary, capricious, and made with unilateral restraints and restrictions that undermine and abolish the practice of the Sunni Muslim religion." Id. at 10-11.

The above allegations found in Brown's complaint are not sufficient to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). These allegations no more than regurgitate the elements of Brown's cause of action and amount to

"mere conclusory statements" that he is be entitled to relief. See Iqbal, 129 S.Ct. at 1949. In light of Twombly and Iqbal, this Court need not accept as true such conclusory allegations. See id. at 1951; see also Twombly, 550 U.S. at 554-55. Brown does claim that the BOP initially removed the Dar-US-Salam publications from the chapel library. However, given the obvious explanation for the removal of the religious texts from the library - that the books should be removed for security purposes - and Brown's request that we infer discriminatory intent, "discrimination is not a plausible conclusion." Iqbal, 129 S.Ct. at 1951-52. Therefore, the assumption of the fact that the publications were removed does not state "a plausible claim for relief," id. at 1950, and we will dismiss Brown's claims against defendants Watts and Lappin for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### 4. USP Canaan Defendants' Entitlement to Qualified Immunity

While the plaintiff has sought injunctive relief, he has also sued each of the defendants in their individual capacities for their alleged conduct. As such, we must consider whether the USP Canaan Defendants, as they are government officials, are entitled to qualified immunity.

Saucier v. Katz has mandated a two-step analysis concerning qualified immunity. First, a court must decide whether the facts alleged, taken in the light

most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001) Second, a court must decide whether that right was clearly established. Id. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202.

Earlier this year, the Supreme Court held that Saucier's "rigid order of battle" is not a mandatory requirement. Pearson v. Callahan, 129 S.Ct. 808, 817 (2009). Lower courts can use their discretion to decide which of the two prongs to consider first. Id. at 818.

First, Brown claims that the USP Canaan Defendants violated his First Amendment right to free exercise of religion[1] and his Fifth Amendment right to due process and equal protection. The courts are to "accord substantial deference to the professional judgment of prison administrators . . . ." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). A prison regulation that affects a constitutional right will be "valid if it is reasonably related to legitimate penological interests." Turner

---

[1] The Supreme Court has "not found [in a Bivens action] an implied damages remedy under the Free Exercise Clause." Iqbal, 129 S.Ct. at 1948. However, the Court has assumed, without deciding, that a Bivens action under the First Amendment is actionable. See id. (citing Hartman v. Moore, 547 U.S. 250, 254, n. 2 (2006)).

v. Safley, 482 U.S. 78, 89 (1987).  In determining whether this reasonable relationship exists, we must undertake a two part test.  First we must decide whether there exists a "'a valid, rational connection between the prison regulation and the legitimate interest put forth to justify it.'"  Fontroy v. Beard, 559 F.3d 173, 178 (3d Cir. 2009) (quoting Monroe v. Beard, 536 F.3d 198, 207 (3d Cir. 2008)).  Second, if such a connection does in fact exist, we must decide (1) whether there is an alternative means for prisoners to exercise the right, (2) what burden would be imposed upon prison resources if the right were accommodated, and (3) whether alternatives to the regulation exist "that fully accommodate the inmate's rights at de minimis cost to valid penological objectives."  Fontroy, 559 F.3d at 178 (3d Cir. 2009) (citing Monroe, 536 F.3d at 207).

Brown has failed to allege facts supporting a conclusion that the USP Canaan Defendants violated Brown's constitutional rights by removing the religious texts and material at issue.  In his complaint, Brown concedes that the Office of General Counsel informed him of what is a clear and rational connection between the prison regulation and the purpose behind it: namely, to inventory chapel library materials and remove particular books "for security reasons . . . ." (Rev. Doc. No. 1 at 9).  While Brown alleges that all of the Dar-Us-Salam publications were removed, he makes no claim that all Islamic writings or material

15

had been removed; therefore, "alternative means of exercising the circumscribed right" were available. Fraise v. Terhune, 283 F.3d 506, 521 (3d Cir. 2002). At the time of the project, prison officials could have reasonably believed that a significant burden would be imposed upon prison resources, staff, and others if each prison chapel were required to compile a list of all of the books and other items in the prison chapel libraries. Also, it was not clear that any alternatives existed that imposed a de minimis burden on the prison system, especially in light of the real possibility that there were books and other items in the libraries that should have been excluded pursuant to BOP security policies. Therefore, we conclude that, because the prison regulation was reasonably related to legitimate penological interests, the USP Canaan Defendants did not violate Brown's constitutionally protected rights.

Even if Brown did have a constitutional right to access to the religious texts and material temporarily removed from the prison chapel's shelves, the boundaries of that right in this case were not clearly established. Here, it would not have been sufficiently clear to the prison officials at USP Canaan that what they were doing violated Brown's constitutional rights. Defendants Lindsay, Karam, and Johnson informed Brown that they were acting in accordance with BOP directives requiring that certain materials in the library be removed . (Rec. Doc. No. 1 at 10). It was

certainly reasonable for these prison officials to believe that their conduct was lawful in light of these directives.

Based on the foregoing, even if the USP Canaan Defendants did violate Brown's constitutional rights, those rights were not clearly established under the second prong of the Saucier test. Therefore, we conclude that defendants Lindsay, Karam, and Johnson are entitled to qualified immunity on Brown's claims that their actions constituted a violation of his constitutional rights.

Second, Brown claims that the USP Canaan Defendants violated the Religious Freedom Restoration Act ("RFRA") when they removed the materials at issue from the prison chapel's library. For there to be a violation of the RFRA, the government must "substantially burden a person's exercise of religion . . . ." 42 U.S.C. §2000bb-1(a). Though the RFRA does not explain what constitutes a substantial burden, the Third Circuit has articulated what constitutes a substantial burden under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[2] Under the RLUIPA, a substantial burden occurs when an individual

---

[2] The RLUIPA was passed by Congress after the Supreme Court, in City of Boerne v. Flores, 521 U.S. 507, 532-36 (1997), struck down the RFRA as applied to the states. See Cutter v. Wilkinson, 544 U.S. 709, 715 (2005). The provisions found in the RFRA and RLUIPA are quite similar, with the RLUIPA being more limited and addressing "only land use regulations . . . and the religious rights of institutionalized persons . . . ." Lighthouse Inst. for Evangelism, Inc. v. City of

17

"is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit" or "the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).

Defendants Lindsay, Karam, and Johnson did not substantially burden Brown's rights in violation of the RFRA. Brown has pled no facts supporting the conclusion that the prison officials put pressure on Brown to alter his behavior or to alter his beliefs. In addition, Brown has pled no facts indicating he was forced to choose between following or adhering to the precepts of his religion and being able to receive a generally available prison benefit. Brown's statement that the USP Canaan Defendants placed "[a]n undue and unwarranted burden . . . upon the Sunni Muslim Community in violation of the [RFRA] and the First and Fifth Amendments" is a conclusory and threadbare recital of the elements of his claim of the type prohibited under Iqbal. See 129 S.Ct. at 1949. In his complaint, Brown simply does not plead facts sufficient to support a plausible claim for relief under the RFRA.

---

Long Branch, 510 F.3d 253, 261 (3d Cir. 2007) (internal citations omitted).

In light of the foregoing, defendants Lindsay, Karam, and Johnson are entitled to qualified immunity, and we will grant defendants' Motion to Dismiss.

## VI. Conclusion

For the reasons stated above, we find that defendants' Motion to Dismiss must be granted.

                                 s/ James F. McClure, Jr.
                                 James F. McClure, Jr.
                                 United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDULLAH BROWN, et al. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | No. 4:CV-07-1299 |
| v. | : | |
| | : | (Judge McClure) |
| CAMERON LINDSAY, et al., | : | |
| | : | |

Defendants.				:

**ORDER**

October 1, 2009

In accordance with the accompanying memorandum,

**IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss is GRANTED. (Rec. Doc. No. 130).

2. The complaint is dismissed as against all defendants.

3. The clerk is directed to close the case file.


      s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge